UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEWIS CLINE,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 1:16-CV-3073-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 15, 19. Attorney D. James Tree represents Lewis Cline (Plaintiff); Special Assistant United States Attorney Ellinor R. Coder represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 3. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed an application for social security disability benefits in January 2013, alleging disability since November 1, 2003, due to anger problems, anxiety,

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

depression/suicidal thoughts, high blood pressure, insomnia, left shoulder pain, low back pain, migraines, short term memory loss, and learning disabilities. Tr. 192, 213. Plaintiff's application was denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Ilene Sloan held a hearing on May 28, 2014, Tr. 39-78, and issued an unfavorable decision on June 26, 2014, Tr. 20-30. The Appeals Council denied review on March 4, 2016. Tr. 1-6. The ALJ's June 2014 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on April 27, 2016. ECF No. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on November 7, 1966, and was 46 years old on the filing date of his application, January 2013. Tr. 192. He attended school through the 9th grade and later attempts at obtaining a GED have not been successful. Tr. 44. He testified he has never had a driver's license and, if necessary, will get rides from his father-in-law. Tr. 46. He stated he does not take the bus, but could if required. Tr. 47, 57. However, he testified that because he prefers to not be around people, he would choose to walk if his father-in-law was unable to give him a ride. Tr. 58. In fact, he stated he had recently lost 30 pounds from walking. Tr. 68. When asked how he spends his time, Plaintiff indicated he collects rocks, tries to work with wood, watches television with his wife, and goes to the library. Tr. 48-49.

Plaintiff stated he previously had quite a few friends, but those friends were bad influences. Tr. 50. He indicated he currently has very few friends because he has been trying to clean up his life. Tr. 49-50, 61. On August 30, 2010, Plaintiff was released from prison following a 2007 conviction for third degree rape. Tr. 50, 311. He testified he also has other criminal convictions. Tr. 50-51. For

example, he was convicted of third degree malicious mischief in 2007 after he "busted up" his friend's car with a club. Tr. 51, 56-57. Plaintiff has a long substance abuse history (methamphetamine) as well. Tr. 51-52, 318.

Plaintiff stated he has difficulty reading, but could read simple words. He indicated he does not read the books he checks out at the library, he just looks at the pictures. Tr. 49, 59. Plaintiff said he also has difficulty with learning and concentration. Tr. 62-63, 65.

Plaintiff testified he believed he was unable to work because he has a hard time being around people. Tr. 52-53. He indicated it "just takes a small little thing for someone to say or do and I flip out." Tr. 52. When asked whether he has ever had a job working on his own, Plaintiff replied he did have a job working on his own, but a supervisor or another employee criticized how he was performing the job and he "flipped out." Tr. 53. Plaintiff stated he had not applied for or tried to find a job in the last three or four years. Tr. 53-54.

Plaintiff's last job was a full time position on an assembly line with Foster Farms. Tr. 52-53, 63, 70. Plaintiff's earlier testimony related he was not required to perform work release for the Department of Corrections, Tr. 51, and he quit the job at Foster Farms because he injured his shoulder, Tr. 52. However, his later testimony revealed he quit the work release job at Foster Farms as soon as he fulfilled his requirement, despite the belief that he could have kept the position. Tr. 63-64.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.

*Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that physical or mental impairments prevent him from engaging in his previous occupation. 20 C.F.R. § 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On June 26, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date, January 8, 2013. Tr. 22. At step two, the ALJ determined Plaintiff had the following severe impairments: cognitive disorders variously diagnosed as borderline intellectual functioning and learning disorder; depression; anxiety; and a personality disorder. Tr. 22. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 23.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined he could perform a full range of work at all exertional levels with the following nonexertional limitations: he can understand, remember and carry out simple, routine, and repetitive tasks; he can have occasional, brief, and superficial contact with the general public, coworkers, and supervisors, but cannot perform tandem tasks or tasks involving a cooperative team effort; and he can adapt to routine changes to the workplace environment. Tr. 25.

At step four, the ALJ noted Plaintiff has no past relevant work. Tr. 28. At step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of janitor, agricultural sorter and airplane cleaner. Tr. 29-30. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 8, 2013, the date the application was filed, through the date of the ALJ's decision, June 26, 2014. *Id*.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal

standards.  Plaintiff contends the ALJ erred in this case by (1) failing to give appropriate weight to the examining opinions of Thomas Genthe, Ph.D., Maria Malcolm, Ph.D., and Charles Quinci, Ph.D.; (2) failing to develop the record by ordering a consultative examination that included IQ testing and to obtain clarification from Dr. Genthe; and (3) improperly discrediting Plaintiff's testimony regarding the severity and limiting effects of his impairments.  ECF No. 15 at 6-20.

## DISCUSSION

### A.    Plaintiff's Symptom Testimony

Plaintiff asserts the ALJ erred by failing to provide valid reasons for finding him not fully credible in this case.  ECF No. 15 at 16-20.

It is the province of the ALJ to make credibility determinations.  *Andrews*, 53 F.3d at 1039.  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.  Tr. 25.

The ALJ first determined Plaintiff's daily activities and social interaction were inconsistent with his assertion of disabling functional limitations.  Tr. 25.  It is well-established that the nature of daily activities may be considered when evaluating credibility.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

///

The ALJ indicated records show Plaintiff has consistently been cooperative with his providers and that he is capable of visiting others, going shopping and going to the pet store and library. Tr. 25. The ALJ further cited Section 3 of her decision, Tr. 23-24, which more fully described Plaintiff activities of daily living as follows: he and his wife shared household chores including housecleaning, cooking, and grocery shopping; he would walk with his wife; he played computer games and watched television during the day; he enjoyed going to the pet store and visiting family; he made dinner and could perform most daily activities; he enjoyed working on cars on his own; his hobbies included collecting rocks; he was independent in his daily activities in December 2013, scheduling his own appointments and doing his own cooking, cleaning and shopping; he visited his wife's father; and he would sometimes go to the library and check out books on rocks. Section 3 of the ALJ's decision also described Plaintiff's social functioning, indicating Plaintiff socialized with his wife's father and was capable of shopping and going to the library; he was housed in general population when incarcerated with no indication of any significant issues getting along with other inmates or staff; and he has consistently had productive and appropriate interactions with medical providers. Tr. 24. As noted by the Commissioner, ECF No. 19 at 17, such activities (ability to appropriately interact with medical providers, visit and get along with people socially, go out in the public to the grocery and pet store or to the library, etc.) contradict Plaintiff's allegation that he was unable to work because he could not be around other people. Tr. 25, 52-53. It was proper for the ALJ to consider this level of activity as inconsistent with Plaintiff's claim of totally disabling limitations. *See Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012).

///

///

///

The ALJ next held that the objective medical evidence of record did not substantiate Plaintiff's allegations of disabling limitations. Tr. 26. Plaintiff did not challenge this finding in his opening brief.[1] ECF No. 15 at 16-20.

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (in determining credibility, the ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

The ALJ noted Plaintiff completed chemical dependency and sex offender treatment while incarcerated, but did not have a prolonged history of mental health treatment during his incarceration. Tr. 26. Moreover, records from 2009 indicate Plaintiff was functioning relatively well, his major depressive disorder was in remission in July 2010, and his mental status examination remained mostly normal prior to his release. Tr. 26. A January 2012 psychological evaluation completed by C. Kirk Johnson, Ph.D., opined that although Plaintiff should avoid work environments requiring ongoing interactions with others, Plaintiff was not incapacitated due to his mental health symptoms, Tr. 26, 289, and a May 2012 psychological evaluation completed by Charles Quinci, Ph.D., noted Plaintiff may have been malingering but Plaintiff was still found capable of performing entry-level tasks in a low social environment, Tr. 26, 270-271. A June 2012 office visit with Phillip Dove, M.D., related Plaintiff felt well on antidepressant medication.

---

[1]*See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (the Court will not ordinarily consider matters on appeal that were not specifically and distinctly argued in a party's opening brief).

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

Tr. 26, 281-284. As noted by the ALJ, from that point, there is no indication in the record of any change or deterioration in Plaintiff's mental health. Tr. 26.

As determined by the ALJ, the objective medical evidence of record does not support the disabling symptoms and limitations alleged by Plaintiff in this case. It was proper for the ALJ to conclude Plaintiff's was not entirely credible because Plaintiff's alleged level of limitation was not consistent with the medical evidence which reflects Plaintiff's mental health impairments did not cause completely disabling functional limitations. Tr. 26.

The ALJ next described a number of inconsistencies in Plaintiff's statements. Tr. 26-27. In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When a claimant fails to be a reliable historian, "this lack of candor carries over" to other portions of his testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ noted Plaintiff denied any history of illicit substance abuse in December 2013, Tr. 372, which is not accurate given his lengthy history of methamphetamine dependence, Tr. 26, and that Plaintiff testified he had no adult convictions other than malicious mischief and rape, contrary to the record which shows convictions for burglaries and theft, Tr. 27, 268, 318. Plaintiff did not contest these noted inconsistencies. *See Carmickle*, 533 F.3d at 1161.

The ALJ additionally indicated that contrary to Plaintiff's reports that he walked as needed to get around, went on morning walks with his wife, Tr. 267, got around by walking if his father-in-law was not available to give him a ride, Tr. 58, and had lost 30 pounds from his walking, Tr. 68, Plaintiff alleged he could stand for only 15 to 20 minutes at a time, Tr. 224. Tr. 26. While the Court agrees with Plaintiff that there are physical dissimilarities between walking and standing, the

volume of walking professed by Plaintiff throughout the record appears to contradict an assertion that he could stand for only 15 to 20 minutes at a time. The Court finds the ALJ's view and interpretation of the record reasonable with respect to this finding.

The Court does find that the ALJ erred as to the final two noted inconsistencies. *See infra*. The ALJ found that Plaintiff testified he had never had a job working alone, but the record reflected this was not true. Tr. 26. However, a review of the hearing testimony reveals Plaintiff actually testified he did have a job working on his own, but a supervisor or another employee criticized how he was performing the job and he "flipped out." Tr. 53. Plaintiff did not say he has never had a job working alone.

The ALJ also found Plaintiff's statement the he has never taken the bus to be untrue. Tr. 26. However, Plaintiff actually testified that while he does not take the bus, he could if required, Tr. 47, 57, and that because he prefers to not be around people, he would choose to walk as opposed to taking the bus, Tr. 58. Plaintiff did not state that he has never taken the bus.

The ALJ erred by finding these "inconsistences" reduced Plaintiff's credibility. Nevertheless, given the ALJ's other reasons for finding Plaintiff less than fully credible, as indicated above, including three other supported inconsistencies, the Court finds these two errors harmless. *See Carmickle*, 533 F.3d at 1163 (upholding adverse credibility finding where ALJ provided four reasons to discredit claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming credibility finding where one of several reasons was unsupported by the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

///

///

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's allegations were not entirely credible in this case.

**B.    Medical Source Opinions**

Plaintiff contends that the ALJ erred by failing to accord proper weight to the opinions of certain medical sources of record. Plaintiff specifically argues the ALJ erred by discounting the examining opinions of Thomas Genthe, Ph.D., Maria Malcolm, Ph.D. and Charles Quinci, Ph.D. ECF No. 15 at 6-12.

In this case, the ALJ found that although Plaintiff had severe mental impairments (cognitive disorders variously diagnosed as borderline intellectual functioning and learning disorder, depression, anxiety, and a personality disorder), the medical evidence did not support the degree of limitation alleged by Plaintiff. Instead, the ALJ determined Plaintiff retained the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: he can understand, remember and carry out simple, routine, and repetitive tasks; he can have occasional, brief, and superficial contact with the general public, coworkers, and supervisors, but cannot perform tandem tasks or tasks involving a cooperative team effort; and he can adapt to routine changes to the workplace environment. Tr. 25. The Court finds the ALJ's interpretation of the medical evidence of record is supported by substantial evidence. *See infra*.

### 1. Thomas Genthe, Ph.D.

Plaintiff asserts the ALJ erred by according "little weight" to the opinions and GAF scores of Dr. Genthe. ECF No. 15 at 6-12.

If the opinion of an examining medical professional is not contradicted, it can only be rejected with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043. Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding an examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-1464 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

Here, Dr. Genthe's opinion was contradicted by other medical sources, including state agency reviewing physicians,[2] Dr. Johnson's January 2012 evaluation and Dr. Quinci's May 2012 report; therefore, the ALJ needed to only provide specific and legitimate reasons for rejecting Dr. Genthe's report.

Dr. Genthe completed a psychological evaluation on December 5, 2013. Tr. 371-376. It was noted that Plaintiff had never received mental health counseling and was not taking prescribed psychotropic medication at the time of the examination. Tr. 371. Plaintiff reported current symptoms of depression and a

---

[2]State agency consultants, Patricia Kraft, Ph.D., and Steven Haney, M.D., indicated Plaintiff was capable of performing unskilled work involving limited social contact. Tr. 27, 88-90, 103-105. On January 8, 2014, Eugene Kester, M.D., opined Plaintiff had no physical restrictions and was limited to simple, isolated work secondary to his mental health impairments. Tr. 378. The ALJ accorded these state agency assessments significant weight. Tr. 27.

history of anxiety problems.  Tr. 372.  As indicated in Section A, above, Plaintiff denied any history of substance abuse.  Tr. 372.  Plaintiff presented as "generally open, cooperative and friendly."  Tr. 373.

      Dr. Genthe opined that Plaintiff was unlikely to function adequately in a work setting until his psychological symptoms were managed more effectively.  Tr. 375.  He assessed many of Plaintiff's functional abilities as "poor" and indicated Plaintiff's cognitive limitations would likely hinder his acquisition of many important skills in a reasonable amount of time.  Tr. 375.  Dr. Genthe believed Plaintiff would likely perform best on tasks that are relatively simple, repetitive and do not demand cognitive flexibility (i.e. entry-level labor positions); would likely function best in environments that do not offer significant distractions; and would likely function best in settings that would not require his having to deal with a large number of coworkers and/or consumers.  Tr. 375.  Dr. Genthe noted Plaintiff may find it difficult to work independently or sustain attention and concentration on tasks without a fair amount of supervision.  Tr. 375.  Dr. Genthe concluded by indicating Plaintiff's prognosis would likely improve if he obtained appropriate treatment.  Tr. 376.

      The ALJ first accorded Dr. Genthe's report "little weight" because it was inconsistent with Plaintiff's treatment history, performance on mental status examination and independent daily activities and social functioning.  Tr. 27.  As previously discussed, Plaintiff did not have a prolonged history of mental health treatment during his incarceration, records from 2009 indicate Plaintiff was functioning relatively well, his major depressive disorder was in remission in July 2010, and his mental status examination remained mostly normal prior to his release.  Tr. 26.  In January 2012, Dr. Johnson opined that Plaintiff was not incapacitated due to his mental health symptoms, Tr. 289, in May 2012, Dr. Quinci found Plaintiff capable of performing entry-level tasks in a low social environment, Tr. 270-271, and in June 2012 Dr. Dove indicated Plaintiff was

feeling well on antidepressant medication. Tr. 281-284. In fact, at the time of Dr. Genthe's evaluation, Plaintiff was not taking psychotropic medications and indicated he had never received mental health counseling. Tr. 371. Furthermore, Plaintiff's activities of interacting appropriately with medical providers, visiting and getting along with people socially, and going out in the public to shop or visit the library contradict the opinion that Plaintiff is unable to work because he is not able to be around others.

The ALJ additionally indicated the social limitations assessed by Dr. Genthe were entitled to little weight because they were internally inconsistent with Plaintiff's open, cooperative and friendly presentation. Tr. 28. Dr. Genthe's found Plaintiff presented as generally open, cooperative and friendly with fair eye contact and no psychomotor agitation or retardation. Tr. 373. As determined by the ALJ, this is not consistent with the workplace social limitations assessed by Dr. Genthe.

Finally, the ALJ indicated the opinion of Dr. Genthe was accorded little weight because the assessed limitations were based, at least in part, on Plaintiff's non-credible self-report. Tr. 28. As discussed above, the ALJ's adverse credibility determination is supported by clear and convincing reasons. A physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of a claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also Morgan,* 169 F.3d at 602 (the opinion of a physician premised to a large extent on a claimant's own account of symptoms and limitations may be disregarded where they have been properly discounted). A review of Dr. Genthe's report reveals Dr. Genthe relied on Plaintiff's self-reported symptoms to a great extent. *See* Tr. 371 ("Mr. Cline stated 'I don't get along with people. I have a big issue with people. I don't like being around them.'"); Tr. 372 ("Mr. Cline reported current symptoms of depression, which he described as . . . . Mr. Cline reported history of anxiety problems, which he described as . . . ."); Tr. 374 ("Mr. Cline reported his mood as 'pretty good'".). Since Plaintiff was properly found by the

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

ALJ to be not entirely credible, *see supra*, the ALJ appropriately discounted Dr. Genthe's report on the basis that it was based, at least in part, on Plaintiff's self-reported complaints.

Based on the foregoing, the Court finds that the ALJ provided specific, legitimate reasons that are supported by substantial evidence for according little weight to the evaluation of Dr. Genthe. Accordingly, the ALJ did not err with respect to his findings regarding Dr. Genthe's report.

### 2. Maria Malcolm, Ph.D.

Plaintiff contends the ALJ erred by giving "little weight" to the July 2011 DSHS psychological evaluation completed by Dr. Malcolm. ECF No. 15 at 6-8.

Dr. Malcolm assessed marked limitations with Plaintiff's ability to learn new tasks, perform routine tasks without undue supervision and communicate and perform effectively in a work setting with public contact. Tr. 265. She indicated Plaintiff presented with borderline intellectual functioning and depressive symptoms and opined Plaintiff's capacity to learn vocational tasks and complete them at a competitive rate and capacity for stress management "may be limited." Tr. 269. She noted that Plaintiff's symptoms at the time of the one-hour interview presented a barrier to immediate vocational functioning. Tr. 269.

Dr. Malcolm's opinion was contradicted by other medical sources, including state agency reviewing physicians, Dr. Johnson's January 2012 evaluation and Dr. Quinci's May 2012 report; therefore, the ALJ needed to only provide specific and legitimate reasons for rejecting her report.

As with Dr. Genthe, the ALJ first accorded the report "little weight" because it was inconsistent with Plaintiff's treatment history, performance on mental status examination and independent daily activities and social functioning. Tr. 27. As discussed above, this was a specific and legitimate reason to discount assessed significant vocational limitations. *See supra*. The ALJ additionally indicated the opinion of Dr. Malcolm was accorded little weight because it was based, at least in

part, on Plaintiff's non-credible self-report. Tr. 28. A review of the report reveals Dr. Malcolm apparently relied on Plaintiff's self-report to a significant extent as the mental status and psychological testing was fairly normal and she primarily relied on Plaintiff's presentation of symptoms and history in formulating her opinions. Tr. 268-269.

The Court finds the ALJ provided specific, legitimate reasons that are supported by substantial evidence for according little weight to Dr. Malcolm's July 2011 assessment.

### 3. Charles Quinci, Ph.D.

Plaintiff also contends the ALJ erred by not including all of the limitations cited in Dr. Quinci's January 2011 and May 2012 psychological/psychiatric evaluation reports in the ultimate RFC determination. ECF No. 15 at 8-12.

In January 2011, Dr. Quinci marked that Plaintiff had a severe limitation in his ability to communicate and perform effectively in a work setting with public contact and a marked limitation in his ability to maintain appropriate behavior in a work setting, indicating that Plaintiff's social functioning was poor. Tr. 346. However, it was noted that Plaintiff was pleasant and cooperative, his affect with appropriate, he maintained good eye contact and his social contact was interactive, his thought process was logical and connected, his thought content was appropriate, his memory was intact, there were no cognitive functioning impairments noted, his judgment was good, and his insight was fair. Tr. 348. In May 2012, Dr. Quinci opined that Plaintiff could perform routine tasks if given basic/simple instructions and appeared able to perform entry level tasks in a low social environment. Tr. 271.

The ALJ accorded weight to Dr. Quinci's opinion that Plaintiff could perform entry level tasks in a low social environment, but "little weight" to the opinion that Plaintiff was unable to sustain the mental requirements of work secondary to marked to severe limitations in social and/or cognitive functioning.

Tr. 27. The ALJ is not required to adopt in full the opinion of any particular medical source. *See Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" (quoting *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988))). An ALJ may properly rely upon only selected portions of a medical opinion while ignoring other parts, but such reliance must be consistent with the medical record as a whole. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

As with Dr. Genthe and Dr. Malcolm, the ALJ properly determined Dr. Quinci's January 2011 marked/severe social restriction was not consistent with Plaintiff's treatment history, performance on mental status examination and independent daily activities and social functioning. Tr. 27. This was a specific and legitimate reason to discount the assessed significant limitations. *See supra*. The ALJ also noted an internal inconsistency, the finding that Plaintiff could perform entry level work in a low social environment versus the assessment that Plaintiff was unable to sustain work secondary to marked to severe limitations in social functioning. Tr. 28. Finally, the ALJ determined Dr. Quinci's significant limitations were accorded little weight because it was based, at least in part, on Plaintiff's non-credible self-report. Tr. 28; *see* Tr. 345 (notations which indicate Dr. Quinci did not observe symptoms of low energy, low self-esteem or anger problems).

Here, the ALJ properly evaluated the opinions of Dr. Quinci, interpreted and resolved ambiguities from the entirety of the medical evidence, and adopted the limitations she found credible and supported by the overall record. The ALJ did not err by giving weight to the opinion of Dr. Quinci that Plaintiff was capable of performing entry level tasks in a low social environment, while also discounting Dr. Quinci's early opinion assessing marked/severe social limitations.

///

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g). Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, this Court's role is not to second-guess that decision. *Fair*, 885 F.2d at 604. Based on the foregoing, the Court finds the ALJ's interpretation of the medical record is supported by the weight of the evidence of record. The ALJ provided specific and legitimate reasons for giving little weight to the December 2013 opinions of Dr. Genthe; little weigh to the January 2011 opinions of Dr. Malcolm; weight to the May 2012 opinion of Dr. Quinci, while also rejecting his early opinion; and significant weight to the opinions of the state agency assessments and Dr. Johnson's opinion.

## C.  Develop the Record

Plaintiff also contends the ALJ committed reversible error by denying Plaintiff's request to fully and fairly develop the record. ECF No. 15 at 13-16. Plaintiff argues the ALJ should have ordered a consultative exam that included IQ testing and should have re-contacted Dr. Genthe for clarifying information. *Id*.

In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan*, 242 F.3d at 1150; *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). However, it is Plaintiff's burden to prove he is disabled. 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."). The Code of Federal Regulations explains:

> [y]ou have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you

are blind or disabled.  This duty is ongoing and requires you to disclose any additional related evidence about which you become aware.  This duty applies at each level of the administrative review process . . . .  We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 404.1512(a); *see also* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

An ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *Tonapetyan*, 242 F.3d at 1150.  As discussed above, the record does not support a more restrictive RFC determination in this case.  The ALJ's RFC determination is in accord with the weight of the record evidence and free of legal error.  The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence.  Accordingly, the ALJ did not err by failing to order a consultative examination that included IQ testing or by refusing to further develop the record by re-contacting Dr. Genthe for clarifying information.[3]

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error.  Accordingly, **IT IS ORDERED:**

///

---

[3]The Court finds it significant to note that Plaintiff's request that the ALJ issue a subpoena to Dr. Genthe to define his medical opinion in vocationally relevant terms was made orally at the time of the administrative hearing, not by a written request "at least five days before the hearing date" as required by 20 C.F.R. § 404.950(d)(2).  Tr. 20, 74-75.

1.   Defendant's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

2.   Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED July 31, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 20